### James I. Huddleston, III
#### v.
### University of Vermont and State Agricultural College

[719 A.2d 415]

No. 97-262

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed September 4, 1998

*Frank H. Langrock* of *Langrock Sperry & Wool*, Middlebury, for Plaintiff-Appellee.

*Jeffrey J. Nolan* of *Dinse, Knapp & McAndrew, P.C.*, Burlington, for Defendant-Appellant.

**Johnson, J.** Defendant University of Vermont and State Agricultural College (UVM) appeals a superior court decision reversing and remanding UVM's denial of plaintiff's application for in-state residency status with the attendant benefit of reduced tuition. Plaintiff James Huddleston (student) is a medical student at the UVM College of Medicine. UVM denied student's application for in-state status because he failed to prove that he satisfied the residency requirements by clear and convincing evidence. Student appealed this decision to the superior court pursuant to V.R.C.P. 75. The superior court held that, since the preponderance of the evidence standard is generally appropriate in administrative adjudications in Vermont, it applies in UVM's residency determinations. The court remanded the issue for UVM to determine by a preponderance of the evidence whether student is eligible for in-state status. UVM now appeals, arguing that it is not an administrative agency and possesses the implicit authority to set the standard of proof required at residency determinations for reduced in-state tuition. We agree and reverse.

Student was born and raised in Massachusetts, and graduated from Yale University with a B.S. degree in May of 1994. Student moved to Vermont on June 1, 1994, and subsequently found employment at UVM in Burlington. On June 15, 1994, student started the application process for admission to medical school, and applied to twenty-three medical schools, at that time indicating his father's Florida residence as his permanent address. In September 1994, student submitted an application to the UVM College of Medicine, indicating his permanent address as Burlington, Vermont. In the Spring of 1995, student registered to vote in Vermont, obtained a Vermont driver's license, and registered his car in Vermont. Student also filed his 1994 and 1995 income taxes in the state of Vermont.

In April of 1995, student was accepted by UVM as an out-of-state student to begin his studies in the Fall of 1995. In July of 1995, before starting classes, student applied for in-state tuition status. Student's application was denied, and student subsequently appealed. After a hearing, student's application was again denied. Student appealed to the Residency Appellate Officer, who held that student did not qualify as an in-state student as defined in UVM's residency regulations because he failed to establish the necessary intent to make Vermont his permanent residence. Upon reconsideration, the Residency Appellate Officer again denied student's application for in-state tuition status. Student then submitted another application for in-state tuition status for the semester starting in the Spring of 1996. A hearing was

held and his application was denied. In April of 1996, student filed a complaint under V.R.C.P. 75 in Chittenden Superior Court.

In this Rule 75 appeal of governmental action, the Chittenden Superior Court was confined to reviewing only substantial questions of law. See *Molesworth v. University of Vt.*, 147 Vt. 4, 6, 508 A.2d 722, 723 (1986). The court held that, although there was evidence to justify the residency officer's denial of in-state status, the trustees were not authorized to adopt a clear-and-convincing-evidence standard of proof because this power was not explicitly granted by the Legislature. The court held that, because a preponderance of the evidence standard is generally appropriate in administrative adjudications in Vermont, that standard applies to UVM's residency determinations. The court also concluded that there was competent evidence in the record to support the denial of in-state status, and that UVM's more complex definition of domicile did not violate the Equal Protection Clause. The court remanded the issue to UVM for determination of student's in-state status application under the proper standard of proof. Defendant UVM now appeals the superior court order and decision, arguing that UVM is not an administrative agency and that it possesses the implicit authority to set the standard of proof required at residency determinations.

I.

We first determine whether we have jurisdiction to consider this appeal. As we have previously recognized, "a final judgment is a prerequisite to appellate jurisdiction unless the narrow circumstances authorizing an interlocutory appeal are present." *Hospitality Inns v. South Burlington R.I.*, 149 Vt. 653, 656, 547 A.2d 1355, 1358 (1988). A decree or judgment is final if "it makes a final disposition of the subject matter before the Court." *Woodard v. Porter Hospital, Inc.*, 125 Vt. 264, 265, 214 A.2d 67, 69 (1965). The superior court's order does not resolve the controversy between the parties. It is not a final judgment, and a proper appeal lies only pursuant to V.R.A.P. 5.

■ This appeal does not meet the requirements of V.R.A.P. 5 because it was taken without agreement of the parties or permission of the trial court. Nevertheless, we have previously suspended the application of V.R.A.P. 5 where dismissal of the appeal would most likely result in another appeal after final judgment, the merits of the questions of law were fully briefed and argued before the Court, and the Court has spent valuable time preparing for the case. See *Castle*

*v. Sherburne Corp.*, 141 Vt. 157, 165, 446 A.2d 350, 354 (1982). All of these factors are present in the instant case. Reversal of the trial court's decision requiring UVM to evaluate student's application under a preponderance of the evidence standard will obviate the need for inevitable additional appeals and will avoid a rehearing of student's claims by UVM under an erroneous standard of proof. Thus, in the limited circumstances of this case and in light of our decision to reverse the trial court's decision, we suspend the rules and reach the merits. See V.R.A.P. 2.

## II.

We now turn to the merits of UVM's appeal. The issue for our review is whether the trustees of UVM have the authority to adopt a clear-and-convincing-evidence standard of proof in deciding eligibility for reduced in-state tuition. The trial court held that, in the absence of a specific statute authorizing UVM to set a higher burden of proof, administrative adjudications of residency should be subject to the Administrative Procedure Act (APA), 3 V.S.A. §§ 801-849. The APA does not specify a burden of proof, but we have held that the usual standard of proof in state administrative adjudications is a preponderance of the evidence. See 3 V.S.A. §§ 801-849; *In re Muzzy*, 141 Vt. 463, 472, 449 A.2d 970, 974 (1982).

In opposition to the trial court's decision, UVM claims that it is not an administrative agency subject to the APA, citing *Sprague v. University of Vermont*, 661 F. Supp. 1132 (D. Vt. 1987), and that, as a result, our cases supplying a burden of proof in state administrative adjudications are inapposite. UVM also argues that it has plenary authority to manage and control its internal affairs, and has specific authority to define and decide residency determinations within the limits of the statute. See 16 V.S.A. § 2822.

We agree with UVM that it has the specific authority under § 2822 to define and decide residency determinations, and that the delegation is sufficiently broad to encompass the adoption of regulations and procedures that include a burden of proof. Nothing in the APA or our previous interpretations of the burden of proof applicable to certain agencies conducting administrative adjudications alters this conclusion.[1]

The Legislature has delegated to UVM the specific authority to implement the legislative policy of securing greater educational

---

[1] The United States District Court for the District of Vermont has thoroughly examined the question of whether or not UVM is a state agency subject to the Administrative

opportunities through reduced tuition charges for Vermont residents. This policy, found at 16 V.S.A. § 2282, provides for reduced tuition at UVM and the State Agricultural College, and requires the trustees of UVM to define eligibility for reduced tuition charges to effectuate the purposes of the section. In defining eligibility, UVM must include, but is not limited to, the following requirements:

(1) reasonable durational domicile requirements;

(2) provision that a residence established for the purpose of attending an education institution by either the person seeking reduced tuition or another shall not by itself constitute residence for the purposes of this section; [and]

(3) requirement of such other indicia of permanent residence as said trustees shall deem proper.

*Id.* § 2282(c). The policy stated in subsection 2, that mere residence for the purpose of attending a Vermont institution is not sufficient to prove in-state status, is echoed in a companion statute, § 2282a. These statutes confer upon the UVM trustees the "authority . . . to distinguish between in-state and out-of-state residents for tuition purposes and to establish certain guidelines for deciding eligibility for reduced tuition charges." *Molesworth*, 147 Vt. at 6, 508 A.2d at 723.

It is true, as student argues, that the legislative grant of authority does not mention that UVM must use a particular standard of proof to determine residency status, but it does not follow that UVM is without authority to adopt one. A fair reading of the statute supports the conclusion that UVM was required to do more than adopt a regulation defining domicile. The policy statements evince that the Legislature contemplated that UVM would take action to "effectuate the purposes of this subsection." *Id.* § 2282(c). The statute required UVM to adopt regulations and procedures that were not specifically enumerated in the statute. Otherwise, the policy could not be implemented.

UVM adopted a residence regulation setting forth in-state status classification rules and requirements for documentation, and providing procedures by which in-state status would be decided. The regulation, originally adopted in 1974 and amended most recently in 1987, includes a number of procedures, including the right to a hearing, and necessarily includes a provision concerning burden of

Procedure Act in *Sprague*, but our holding here makes it unnecessary to reach those broader questions.

proof. The regulation places the burden of proof on the person seeking in-state status.

The question is whether UVM has acted consistently with its authority under the enabling statute in adopting a clear-and-convincing-evidence standard of proof. See *In re Baptist Fellowship of Randolph, Inc.*, 144 Vt. 636, 638, 481 A.2d 1274, 1275 (1984) (validity of agency's rules and regulations will be upheld if they are reasonably related to purposes of enabling legislation). While we need not characterize UVM's status for the purposes of this opinion,[2] we note that, even if UVM's actions were evaluated as those of an administrative agency, we would nonetheless find that UVM has acted well within the powers granted to it.

It is wholly consistent with the purpose of the statute for UVM to erect significant barriers to establishing in-state residency, in view of the Legislature's twice-expressed concern that Vermont residency alone should not automatically confer in-state status. The hurdle to in-state tuition is high in order to effectuate the purpose of the statute, which is to provide greater educational opportunities to the youth of Vermont at the state university. Moreover, although UVM's Residency Policy has been in effect for many years, the Legislature has not taken any action in response to it or changed the larger policy goals set forth in the statute.

We conclude that UVM trustees have the implicit authority to adopt a standard of proof applicable to residency determinations in furtherance of their legislative charge to implement state policy on reduced tuition for in-state students. Had the Legislature intended to prohibit the use of particular burdens of proof, it would have added those limitations to § 2282(c). In light of the broad delegation of authority to UVM on this subject, it would be inappropriate for the judiciary to substitute its judgment on the proper standard of proof, so long as constitutional rights are not implicated.

Our decision is not inconsistent with our holdings under the Vermont APA where we have found that a preponderance of the

---

[2] UVM argues that it is not a state agency and the trustees have plenary authority to manage and control the University's affairs, that is, that their authority is unrestricted unless specific statutes impose limitations. State agencies, by contrast, have " 'only such powers as are expressly conferred upon it by the Legislature, together with such incidental powers expressly granted or necessarily implied as are necessary to the full exercise of those granted.' " See *In re Club 107*, 152 Vt. 320, 323, 566 A.2d 966, 967 (1989) (quoting *Trybulski v. Bellows Falls Hydro-Electric Corp.*, 112 Vt. 1, 7, 20 A.2d 117, 120 (1941)).

evidence standard is required in certain administrative adjudications. See *In re Muzzy*, 141 Vt. at 472, 449 A.2d at 974 (substantial evidence standard rejected as appellate standard of review in favor of preponderance of evidence); see also *Relation v. Vermont Parole Bd.*, 163 Vt. 534, 539, 660 A.2d 318, 320-21 (1995) (parole revocation); *In re VSEA*, 162 Vt. 277, 280, 648 A.2d 394, 396 (1994) (labor relations); *LaFaso v. Patrissi*, 161 Vt. 46, 54, 633 A.2d 695, 700 (1993) (prison discipline). In each of these cases, a standard of proof less than a preponderance of the evidence was used by the administrative agency to determine substantial rights meriting a greater level of due process. We do not find the same constitutional rights implicated in the determination of residency status for in-state tuition. See, e.g., *Spielberg v. Board of Regents, Univ. of Mich.*, 601 F. Supp. 994, 999 (E.D. Mich. 1985) (rejecting constitutional due process challenge to aspect of university's residency determination procedure). Thus, regardless of whether UVM is subject to the APA, a question we do not decide, these cases are inapposite to the facts before us because there is not a similar level of due process implicated in the instant case.

In light of the Legislature's specific delegation of authority to UVM to deal with the subject of residency, UVM is permitted to devise appropriate standards with regard to residency determinations.

## III.

Finally, student seeks to challenge the superior court's decision that there was competent evidence in the record to support the denial of in-state status. Plaintiff has not raised these issues by cross-appeal, and UVM argues that we lack jurisdiction to consider these claims. We agree.

An appellee seeking to challenge aspects of a trial court's decision must file a timely cross-appeal, see *Union Bank v. Jones*, 138 Vt. 115, 125, 411 A.2d 1338, 1344 (1980), unless, of course, the party was content with the final order below, leaving it nothing to appeal. See, e.g., *Staruski v. Continental Tel. Co.*, 154 Vt. 568, 571 n.3, 581 A.2d 266, 267-68 n.3 (1990). In *Staruski*, the trial court granted the defendant's motion for a judgment notwithstanding the verdict, and the plaintiff appealed. The defendant argued on appeal that, in the event the judgment as a matter of law were reversed, it was entitled to a new trial because the trial court committed several enumerated errors. We concluded that the defendant's arguments were properly raised despite its failure to file a cross-appeal, reasoning that the defendant was aggrieved by the errors it alleged only in the event we

overturned the trial court's judgment in its favor. See *id*. Otherwise the errors were moot.

■ In the instant case, however, student was not content with the final order of the trial court. Even if we affirmed the trial court's holding on the burden of proof, student claims the trial court should have held he was entitled to judgment as a matter of law because there was sufficient evidence in the record to prove that his domicile was in Vermont. Student was therefore required to appeal the ruling if he believed it was in error. He did not do so, and we lack jurisdiction to reach the merits of his claim. See *Jones*, 138 Vt. at 125, 411 A.2d at 1344 (Court lacked jurisdiction to hear appeal absent cross-appeal).

*Reversed.*

**Dooley, J.,** concurring. I concur that UVM can require proof of residency by clear and convincing evidence and that plaintiff is foreclosed from arguing that he is a resident as a matter of law because he failed to cross-appeal. I write only to state that the result is unjust. Essentially, UVM is denying plaintiff residency status because, two weeks after his arrival in Vermont in 1994, he once claimed he was a Florida resident in applying to medical school in that state. In fact, he had no serious claim to Florida residency even though his father resided in that state. Thus, for purposes of tuition, plaintiff is stateless, unable to claim residency anywhere.

Plaintiff's parents lived together in Massachusetts until their divorce, when his father moved to Florida and set up a medical practice there. Plaintiff remained with his mother, who claimed him as a dependent for tax purposes, but attended private school in New Hampshire. He then attended Yale University, with a summer semester at University of California at Santa Cruz, until his graduation in May 1994. In that month, he moved to Burlington, Vermont, primarily because his girlfriend and his brother lived there. He has resided in Burlington ever since, working first as a research assistant in the psychiatry department of the UVM College of Medicine (July 1994 until August 1995) and then attending UVM Medical School. He was turned down for in-state tuition for the first semester of the 1995-96 academic year, and then again for the second semester. It is the latter decision which is on appeal.

UVM denied in-state residency because it found that plaintiff's work in 1994-95 really was undertaken to improve his chance of getting into medical school and thus showed nothing about his intent to remain indefinitely in Vermont. Thus, the residency appellate

officer stated in her decision, "I do not find that your residence in Vermont has yet taken on the permanence required by the UVM residency regulations or that you continue to reside in Vermont for reasons other than continuing your studies in Vermont." In response to a request for reconsideration, the appellate officer sharpened the point of the decision:

> You moved to Vermont temporarily to take some time off from school, apply to medical schools and await the results of your applications. It does not appear that your situation changed because you were admitted to UVM College of Medicine.

The second decision, in March 1996, has similar themes, but particularly emphasizes that two weeks after arriving in Vermont, plaintiff filed a standard application with 23 medical schools, not including UVM, claiming Florida residency. The appellate officer concluded that the Florida residence claim required plaintiff to take "appropriate steps to break [his] ties to Florida" and make Vermont plaintiff's "true, fixed and permanent home." Since plaintiff failed to do so, "UVM College of Medicine offered [him] admission as a Florida resident."

The three decisions in this case are increasingly polarized, as plaintiff has tried to respond to the earlier decision and the appellate officer has shifted to new grounds. The main basis provided in the final decision, that plaintiff is really a Florida resident, is not supported by the record. Nor do I find any basis for the claim that plaintiff came here to take off time from school rather than his stated claim that he came here to live with his girlfriend and brother, both of whom were Vermont residents.

The law of domicile requires that every person have a domicile somewhere. See, e.g., *Piche v. Department of Taxes*, 152 Vt. 229, 232, 565 A.2d 1283, 1285 (1989) (acquiring new domicile requires proof of residence and intention to remain at new residence indefinitely). I cannot agree that residency rules must be constructed to make it impossible for some students to claim their domicile. Plaintiff's only serious claim of domicile is in Vermont. He has not lived in Massachusetts for seven years and did not return there after college. Except for periodic visits to see his father, plaintiff has not lived in Florida. His presence in New Hampshire, Connecticut and California, entirely for school purposes, established no domicile in those states. Had plaintiff properly cross-appealed, I would have found his claim of Vermont domicile valid as a matter of law.

258

I am authorized to state that Justice Morse joins in this concurrence.